No. 24-3498

# In the United States Court of Appeals
# for the Sixth Circuit

————

JEFF SMITH,
PLAINTIFF-APPELLANT

*v.*

CITY OF UNION, OHIO,
DEFENDANT-APPELLEE

————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION, NO. 3:22-CV-00096
HON. MICHAEL J. NEWMAN, PRESIDING

————

## BRIEF AND ADDENDUM
## FOR PLAINTIFF-APPELLANT JEFF SMITH

Matthew D. Stokely (OH 0062971)
PICKREL, SCHAEFFER & EBELING CO., LPA
2700 Stratacache Tower
Dayton, Ohio 45423
T: (937)223-1130/ F: (937) 223-0339
E: mstokely@pselaw.com
Attorney for Plaintiff-Appellant Jeff Smith

**ORAL ARGUMENT REQUESTED**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 6 Cir. R. 26.1, Jeff Smith ("Smith" or "Plaintiff-Appellant") hereby makes the following disclosures:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation? **No.** If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party: **N/A.**

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  **No.** If yes, list the identity of such corporation and the nature of the financial interest:  **N/A**.


*/s/Matthew D. Stokely*
Matthew D. Stokely

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................ ii

TABLE OF CONTENTS................................................................................................ iii

TABLE OF AUTHORITIES ........................................................................................ .v

STATEMENT REGARDING ORAL ARGUMENT ................................................... vii

JURISDICTIONAL STATEMENT............................................................................... 1

STATEMENT OF ISSUES ........................................................................................... 1

INTRODUCTION .......................................................................................................... 2

STATEMENT OF THE CASE AND FACTS .............................................................. 6

SUMMARY OF ARGUMENT ..................................................................................... 11

STANDARD OF REVIEW ........................................................................................... 11

ARGUMENT ................................................................................................................. 12

I.    PLAINTIFF-APPELLANT ADDUCED ENOUGH EVIDENCE TO
      SURVIVE SUMMARY JUDGMENT ON HIS AGE
      DISCRIMINATION CLAIM
      ........................................................................................................................... 12

      A.    The District Court Incorrectly Held that Age-Related comments Made
            By Chief Blackwell During Smith's Pre-Disciplinary Hearing Were Not
            Direct Evidence of the city's Discriminatory Animus to Terminate
            Smith's Employment . ............................................................................... 12

            1.    The District Court Incorrectly Stated the Elements of the Four-Factor
                  Test to Determine Whether a Decision-maker's Age-Biased comments
                  are Direct Evidence of Discriminatory Animus………………….……..12

            2.    The Trial Court Failed to Substantively Address All Four Factors of the
                  Test to Determine Whether the Statements Made by Chief Blackwell
                  During Smith's Pre-Disciplinary Hearing could be Taken as Direct
                  Evidence of Age Discrimination……………………………………..14

**II.    THE DISTRICT COURT ERRED WHEN IT FOUND THAT OFFICER REDMON WAS NOT SIMILARLY SITUATED TO OFFICER SMITH AND THAT THE REASON GIVEN FOR TERMINATION COULD NOT HAVE BEEN PRETEXTUAL** ....................................................................................16

    **A.    Smith Established A Prima Facie Case of Age Discrimination by Demonstrating That Other Similarly Situated Police Officers Committed the Same or Similar Policy Violations and Were Not Disciplined** ............................................................16

    **B.    It Was Undisputed That Smith Was the Oldest Police Officer on the Force, that Redmon is Substantially Younger Than Smith, and that the City Did Not Dispute These Facts**……………………………………..20

    **C.    The District Court Erred When It Failed to Analyze Whether Blackwell's Statements Were Probative as Circumstantial Evidence.** ................................................................ 23

    **D.    The District Court Erred When It Disregarded Evidence Presented Which Demonstrated That Decision-Makers for the City Used the Term "Experience" as a Proxy for Age**……………..………………………25

    **E.    The District Court Disregarded Smith's Evidence That the City's Claim He Violated the City's Pursuit Policy Had No Basis in Fact, and Was Pretextual**……………………………………………………………26

**III.    THE TRIAL COURT ERRED WHEN IT DID NOT ADDRESS ALL OF THE EVIDENCE PRESENTED REGARDING THE CITY'S RETALIATORY ACTIONS**………………….…………………...….29

**CONCLUSION**.................................................................36

**CERTIFICATE OF COMPLIANCE**.........................................37

**CERTIFICATE OF SERVICE**............................................. 37

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**.................38

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202(1986).........................................12

*Blizzard v. Marion Technical College,*
    698 F.3d 275 (C.A.6 (Ohio), 2012)..................................................26, 27, 29

*Broach v. City of Cincinnati,*
    2013 WL 3712338(S.D. Ohio, 2013)........................................................30

*Canitia v. Yellow Freight Sys., Inc.,*
    903 F.2d 1064 (6th Cir. 1990)...............................................................29

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)....................................21

*Cooley v. Carmike Cinemas, Inc.,*
    25 F. 3d 1325 (6th Cir. 1994).............................................................12, 13

*Ercegovich v. Goodyear Tire & Rubber Co.,*
    154 F.3d 344 (1998)......................................................................19, 20

*Geiger v. Tower Auto,*
    579 F. 3d 614 (6th Cir. 2009).................................................................12

*Greer-Burger v. Temesi,*
    116 Ohio St. 3d 324 (2007)..................................................................29

*Guarino v. Brookfield Tp. Trustees,*
    980 F.2d 399 (C.A.6 (Ohio), 1992).......................................................21-22

*Hale v. ABF Freight System, Inc.,*
    503 Fed.Appx. 323 (C.A.6 (Tenn.), 2012)...............................................23, 26

*Hamilton v. General Electric Co.,*
    556 F.3d 428 (6th Cir.2009)..................................................................27

*Hazen Paper Co. v. Biggins,*
    113 S.Ct. 1701, 507 U.S. 604 (1993).........................................................25

*Hodges v. City of Milford,*
    2013 WL 210278 (S.D. Ohio, 2013)..........................................................30

*House v. Rexam Beverage Can Co.,*
    630 F. App'x 461 (6th Cir. 2015).............................................................12

*Imwalle v. Reliance Med. Prods., Inc.,*
    515 F.3d 531 (6th Cir. 2008) .................................................................29

*InterRoyal Corp. v. Sponseller,*
    889 F.2d 108 (6th Cir.1989)..................................................................22

*Lahar v. Oakland Cnty.,,*
    304 Fed. Appx. 354 (C.A. Mich. 2008).......................................................30

*Liebau v. Dykema Gossett, PLLC,*
    2024 WL 1739750 (C.A.6 (Mich.), 2024).....................................................15

*Logan v. Denny's Inc.,*
    259 F.3d 558 (6th Cir. 2001)..................................................................12

*Lowe v. Walbro LLC,*
 972 F. 3d 827 (6th Cir. 2020)....................................................................................11
*McDonnell-Douglas Corp. v. Green,*
 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973).....................................4, 17, 26
*Mitchell v. Toledo Hosp.,*
 964 F.2d 577(6th Cir. 1992)......................................................................................19
*Pelcha v. MW Bancorp, Inc.,*
 988 F.3d 318 (6th Cir. 2021)......................................................................................17
*Peters v. Lincoln Elec. Co.,*
 285 F.3d 456 (6th Cir. 2002)......................................................................................13
*Rachells v. Cingular Wireless Emp. Servs., LLC,*
 732 F.3d 652 (6th Cir. 2013)......................................................................................15
*Reeves v. Sanderson Plumbing Prods., Inc.,*
 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)..........................................27
*Risch v. Royal Oak Police Dep't,*
 581 F.3d 383 (6th Cir. 2009)...............................................................................15, 23
*Sanders v. Lincoln Cnty, Tenn.,*
 231 F. Supp.3d 290 (E.D. Tenn. 2017)......................................................................15
*Saunders v. Ford Motor Co.,*
 879 F. 3d 742 (6th Cir. 2018)....................................................................................11
*Street v. J.C. Bradford & Co.,*
 886 F.2d 1472 (6th Cir.1989).....................................................................................21
*Sutherland v. Mich. Dep't of Treasury,*
 344 F.3d 603 (6th Cir.2003).......................................................................................26
*Western Air Lines, Inc. v. Criswell,*
 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985)..............................................24
*Wideman v. Wal-Mart Stores, Inc.,*
 141 F.3d 1453 (C.A.11(Fla.), 1998............................................................................30

**Statutes**

29 U.S.C. §621, *et seq*..............................................................................................1

29 U.S.C. §623(a)..................................................................................................12, 29

29 U.S.C. §631(a)........................................................................................................12

28 U.S.C. §1291...........................................................................................................1

28 U.S.C. §1331...........................................................................................................1

28 U.S.C. §1343...........................................................................................................1

42 U.S.C. §2000e-5(f)(3)............................................................................................1

Ohio Rev. Code §4112.02.......................................................................................1, 29

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

In accordance with Fed. R. App. P. 34(a) and 6 Cir. R. 34(a), Plaintiff-Appellant Jeff Smith respectfully submits that this appeal warrants oral argument. This case raises issues of summary judgment; we request oral argument because exposition of the law and application of the law are warranted.

## JURISDICTIONAL STATEMENT

This in an appeal from a final judgment of the United States District Court for the Southern District of Ohio, Western Division.  Plaintiff-Appellant filed his initial Complaint in this action on April 12, 2022. Complaint, DocID#1. and his First Amended Complaint on October 28, 2022.  Amended Complaint, DocID#20. Smith alleged violations of his rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.,* and the controlling Ohio Civil Rights Act provision, Ohio Rev. Code §4112.02.  Plaintiff-Appellant was granted leave from the District Court and filed his Second Amended Complaint on July 13, 2023. Second Amended Complaint, DocID#50.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. §2000e-5(f)(3). On May 7, 2024, the District Court entered a final judgment, granting summary judgment to the City of Union ("City" "Defendant-Appellee"). Opinion, DocID#70, PageID#2499.  A timely notice of appeal was filed on June 6, 2024. Notice of Appeal, Doc#72.  Accordingly, this Court has jurisdiction over Plaintiff-Appellant's appeal under 28 U.S.C. §1291.

## STATEMENT OF ISSUES

This appeal presents the following question:

(1)  Did the District court err in granting summary judgment to Defendant City of Union Police Department on Plaintiff's federal and state age discrimination and retaliation claims?

**INTRODUCTION**

This case involves the termination of Plaintiff-Appellant Jeff Smith's ("Smith") employment by the City of Union, Ohio. The decision makers were City Manager John Applegate ("Applegate"), and Police Chief Michael Blackwell ("Blackwell"). Captain Chris Allen ("Allen") was assigned to investigate the facts of two incidents which occurred on May 30, 2020 and May 31, 2020. Generally, the evidence established that Smith was targeted for discipline because he was older, that others similarly situated were not similarly treated, and that these actions resulted in the decision making which led to the termination of Smith for reasons that were plainly pretextual. The evidence also established that the City retaliated against Smith

Plaintiff-Appellant presented both direct and circumstantial evidence of age discrimination and retaliation. Direct evidence included statements made by Blackwell during Smith's pre-disciplinary hearing. Blackwell's statements directly pertained to Smith's age. Blackwell stated that he had observed "younger officers" on a training video who performed better than Smith. Furthermore, Blackwell later testified that he believed at the time he made the statement that younger officer would have "done better" than Smith. Blackwell's discriminatory comments were made to Smith himself, and City Manager Applegate in the context of a pre-disciplinary hearing. The sole purpose of this pre-disciplinary hearing was to decide whether Smith would receive discipline or be terminated.

City Manager John Applegate and Smith were present at the pre-disciplinary

hearing. Blackwell's statements directly referenced Smith's age and directly compared him to "younger" officers in the context of the City's decision-making process. Immediately following the pre-disciplinary hearing, Smith was terminated. Contrary to the Trial Court's decision, these statements were not "isolated, ambiguous, or abstract." The evidence when viewed in the light most favorable to Smith established a direct nexus between Blackwell's statements, and the decision-making process which resulted in Smith's termination.

Smith met all four factors of the test to determine whether Blackwell's statements were direct evidence of discriminatory motive. However, the Trial Court mis-quoted portions of the test and redacted others. This affected the outcome, because the Trial Court failed to consider all of the established relevant facts presented by Smith, and failed to analyze the issue in accordance with this Court's prior holdings regarding direct evidence of discrimination.

The Trial Court failed to consider whether Blackwell's statements were made by a "decision maker or agent" of the decision maker, whether the statements were "related to the decision-making process," and whether they were made "proximate in time" to the act of termination. The Trial Court failed to address relevant, probative evidence which, taken in the light most favorable to Smith, would preclude summary judgment.

The Trial Court also committed error when it did not consider Blackwell's statements as circumstantial evidence in the context of a burden-shifting analysis

under *McDonnell-Douglas*, once it had erroneously determined that the statements were not direct evidence.

Smith introduced testimony establishing that a younger, similarly situated police officer committed many of the same or similar minor infractions during the same traffic stop which led to Smith's termination. However, at the direction of Blackwell, that younger officer was not disciplined. In fact, Captain Allen, who investigated these incidents, recommended to Chief Blackwell that the younger officer involved, Greg Redmon ("Redmon"), also be given discipline for violating the City's policies. However, the City did not discipline the younger officer, who was later promoted, though he was substantially younger, and had substantially less tenure as a police officer than Smith.

Without objection, Blackwell admitted that Smith was the oldest officer on the police force at the time of his termination. The fact that Smith was older than any other officer on the force at the time of termination was well-established throughout the record below. The City did not dispute this fact. The City also did not dispute that Redmon was a substantially younger officer.

Perhaps most significantly, Smith presented relevant, probative evidence that the City engaged in impermissible retaliation towards Smith for pursuing his age discrimination charge after he was reinstated. The City's actions amounted to more than merely scheduling Smith for a fitness for duty examination prior to returning him to work as ordered by the arbitrator. The City attempted to obstruct the City's own

4

independent medical examiner from returning Smith to work. Furthermore, the City's obstruction coincided with the City's award of several promotions during this time, as well as the City's negotiation of pay raises for every officer on the force *except* Smith, who was specifically excluded from any pay increase upon his return.

The Trial Court erred when it did not fully address the evidence presented in regards to whether the City retaliated against Smith. Smith presented evidence that although the Arbitrator awarded him reinstatement on June 8, 2021, the City waited for an inordinate amount of time to schedule Smith for a fitness-for-duty examination to take place on July 16, 2021, while Smith remained off work in spite of the Arbitrator's award of reinstatement. Smith introduced evidence that even after the independent medical examiner returned him to work as of July 24, 2021, which was seven days after Smith's independent medical examination, the City rejected the medical recommendation, and instead sent the doctor additional evidence in the form of video footage, requesting that the doctor review the tape and once again opine on whether Smith could return to work. However, the doctor's opinion remained unchanged that Smith was fit for duty.

Nevertheless, the City delayed returning Smith to work for over two months. During this time, the City proceeded to promote younger officers before the City allowed Smith to return to work. Smith had more seniority than any other officer, and would have been in line for these promotions had he been promptly reinstated per the Arbitrator's order. Once Smith returned to work, the City began to further

retaliate against him by issuing him disciplinary action more frequently and for relatively minor issues. The City issued a letter of reprimand to Smith that was also overturned. The Trial Court failed to address any of these facts in the light most favorable to Smith. For these reasons, which are more fully articulated below, Smith has introduced sufficient evidence of age discrimination and retaliation to survive summary judgment. The Trial Court's decision was in error and should be reversed.

## STATEMENT OF THE CASE AND FACTS

Recounting the evidence in the light most favorable to Jeff Smith, Smith was initially hired as a part-time police officer in February of 2003, and has been a full-time police officer with the City since March of 2003, approximately seventeen (17) years. Doc#64, PageID#1424. Smith was suspended and subsequently terminated following an investigation of two separate incidents which occurred on May 30, 2020, and on May 31, 2020. Doc.#64, Exhibit 5.

During Smith's pre-disciplinary hearing, Chief Michael Blackwell made direct reference to Smith's age. Doc#62, PageID#1358. Blackwell later confirmed that he told Smith and City Manager Applegate, during the pre-disciplinary hearing, that he had "watched videos of younger Officers that didn't make the mistakes that Jeff [Smith] made." *Id.* Blackwell further testified that he believed the aforementioned statement to be true. Blackwell testified that he referenced "younger officers" during Smith's pre-disciplinary hearing because he believed that a "lesser experienced" Officer would have done his job better than Smith: "Yeah. I believe a lesser experienced Officer would have

done better." *Id.* at PageID#1356.

Smith grieved his termination, and following arbitration proceedings, Smith was awarded reinstatement with backpay and no loss of seniority. Arbitrator's Opinion and Award, Exhibit 1, Doc#67, PageID#2447. The arbitrator held that the City's initial premise for launching an investigation and disciplining Smith, that he improperly engaged in a pursuit, had no basis in fact. *Id.* at PageID#2437; PageID#2439; PageID#2440.

The City initially refused to immediately reinstate Smith in accordance with the arbitrator's decision. Instead, the City unreasonably delayed returning Smith to work by ordering that he undergo a psychological examination, not because the City has any set procedure for doing so, but rather, based on statements it alleged were made by Smith during his investigative interview, which was well over a year prior to the date of the arbitrator's order to reinstate Smith. Blackwell Dep, Doc#62, PageID#1364.

The City asserted at the time, that the reason Smith was given a psychological examination was that Smith mentioned in June of 2020, that he had been "stressed" at the scene of the incident on May 30, 2020. *Id.* The City asserted that this statement alone provided grounds to have Smith undergo psychological fitness for duty examination. *Id.* However, the City has more recently provided additional reasons as to why it had Smith undergo an examination in July of 2021, asserting that it had "objective reasons to question" Smith's "ability to perform his or her duties in a manner that protects the safety of the officer and the safety of the public at large." Blackwell

7

Aff., Doc#57-1, PageID#367.   However, the City fails to name any additional "objective reasons" for delaying Smith's return to work.

Smith attended the psychological fitness-for-duty examination that the City scheduled for July 16, 2021, conducted by Dr. Quarry.   Smith Dep., Doc#64, PageID#1419.  Smith testified that Dr. Quarry told him the City had described Smith as "totally different than what I was."  *Id.* at PageID#1435.  Dr. Quarry unequivocally cleared Smith to return to work seven (7) days later, on July 24. *Id.* However, upon receipt of the doctor's recommendation to return Smith to work, the City refused to abide by the opinion of the doctor of the City's own choosing.  Instead, the City asked Dr. Quarry to view the video from Smith's bodycam during the incident on May 30, 2020 and to make a redetermination of his opinion based on the video footage.  *Id.*

Dr. Quarry reviewed the video footage and his opinion that Smith could be returned to work did not change. Id.  Dr. Quarry contacted Smith directly nearly two (2) weeks after he had returned Smith to work the second time.  *Id.* Dr. Quarry inquired how things were now that Smith was back at work, and Smith responded that he had not been returned to work. *Id.*  Dr. Quarry stated that he had returned Smith to work, "twice." *Id.* at PageID#1435. That same day, August 11, 2021, Smith received a call from Chief Blackwell, giving Smith a return date of August 16, 2021. *Id.* By that time, the City had delayed returning Smith for over two months since the Opinion and Award of the arbitrator issued on June 8, 2021.

While Smith was waiting for the City to return him to work after the arbitrator

awarded Smith's reinstatement on June 8, 2021, the City began to promote and re-hire younger Officers to Lieutenant positions. Blackwell Dep., Doc#62, PageID#1364-65; Smith Dep., Doc#64, PageID#1420. These promotions all took place in July of 2021, after Smith's arbitration award, but before the City returned Smith to work. Blackwell Dep., Doc#62, PageID#1364. On July 21, 2021, Greg Redmon, the other officer involved in the May 30, 2020 incident, was promoted to the Lieutenant position. *Id.* The City also re-hired a much younger officer, Jacobs, from another City, to fill the position of Lieutenant. *Id.*

On or about August 13, 2021, after the City promoted and hired several younger officers to fill the Lieutenant positions, the City completed contract negotiations with the Fraternal Order of Police ("FOP"). As a result of these negotiations, conducted by the City, Smith was the only person who did not receive a substantial increase in pay for 2020, while for the years 2022 and 2023, all of the other police officer with the City were set to receive much higher percentage increases in pay than Smith. Smith Dep., Doc#64, PageID#1426-27. The City's own proposal recommended that Smith be given a -0- increase in pay. The City returned Smith to work three (3) days after it completed these negotiations with the FOP, resulting in Smith alone receiving substantially less pay than the younger officers that the City promoted. *Id.*

When the City finally returned Smith to work on August 16, 2021, several of the other officers approached Smith and warned him that the City would be "watching him" and intended to micro-manage Smith. Smith Dep., Doc#64, PageID#1428.

9

Shortly thereafter, the City began to issue disciplinary action to Smith more frequently than it had in the past.    On September 4, 2021, Smith was given an Employee Performance Improvement Plan ("EPIP") in regards to an alleged schedule change issue.  Smith Dep., Ex. 12, Doc#64-21. Smith was never notified of the alleged change, and Smith gave rebuttal to the disciplinary action, noting that he had received several schedule changes that had been made on September 1, 2021 for work dates on September 3, September 8, and September 9, but that the record demonstrated he did not receive any schedule change notification for September 4, the date the City alleged that he was late for work.  *Id.*

On or about October 20, 2021, Smith received a Letter of Reprimand.  Smith Dep., Ex. 13, Doc#64-22, PageID#2143-2152.  The FOP filed a grievance, and on December 7, 2021, the letter of reprimand was removed and the grievance was sustained on Smith's behalf.  Smith received additional "EPIP's" on November 28, 2022, March 27, 2023, and July 4, 2023. *Id.*, Doc#15-17, PageID#530.  Smith argued, and the record demonstrated, that in contrast to the frequency of disciplinary action that Smith began to receive after his reinstatement, and after he had filed a charge of age discrimination against the City, that during the entire five-year period leading up to his termination in 2020, Smith had a total of seven (7) instances of disciplinary action from the City. More recently, Smith had received only one (1) instance of disciplinary action during the entire year in 2019. *Id.*  Smith's most recent suspension had occurred in December of 2014. *Id.*

10

On or about May 16, 2022, Smith filed a second charge of discrimination and retaliation with the Ohio Civil Rights Commission and the EEOC alleging retaliation, disciplinary action, harassment and failure to promote by the city in retaliation for Smith filing and pursuing an age discrimination charge.   Smith Dep. Ex. 7, Doc#64, PageID#1952-1954.  Smith asserted that ever since his employment had been reinstated by the arbitrator, that he had been subject to various discriminatory acts that he believed were based on his age and in retaliation for pursuing his prior age discrimination charges.   *Id.* at PageID#1958-59.  Contrary to the City's statement that Smith "dismissed" this charge, Smith availed himself of the available procedures and requested that the EEOC issue a Notice of Right to Sue in lieu of a full investigation.  *Id.* at PageID#1955.  The EEOC issued a Notice of Right to Sue in October 2021 on Smith's second charge of discrimination and retaliation.  *Id.* at PageID#1964.

## SUMMARY OF ARGUMENT

The District Court improperly granted Defendant-Appellees summary judgment on the issues of age discrimination and retaliation.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo. *Lowe v. Walbro LLC,* 972 F. 3d 827, 831 (6th Cir. 2020).  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Saunders v. Ford Motor Co.,* 879 F. 3d 742, 748 (6th Cir.

2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202(1986)).  The moving party bears the burden of demonstrating that there is no genuine dispute of material fact. *Id.*  In the instant case, Smith is the non-moving party and his evidence must be accepted as true, with all reasonable inferences drawn in Smith's favor.  *Logan v. Denny's Inc.,* 259 F.3d 558, 566 (6th Cir. 2001).

## ARGUMENT

### I.  PLAINTIFF-APPELLANT ADDUCED ENOUGH EVIDENCE TO SURVIVE SUMMARY JUDGMENT ON HIS AGE DISCRIMINATION CLAIM.

The Age Discrimination in Employment Act ("ADEA") prohibits employers from taking adverse employment actions against employees over the age of forty due to their age. 29 U.S.C. §§ 623(a), 631(a) (2018).  *House v. Rexam Beverage Can Co.,* 630 F. App'x 461, 463 (6th Cir. 2015).  Age discrimination can be proven with direct or circumstantial evidence.  *Geiger v. Tower Auto,* 579 F. 3d 614, 620 (6th Cir. 2009).  Smith presented both direct and circumstantial evidence that the City was motivated by age bias when it made the decision to discipline and terminate him.

#### A.  The District Court Incorrectly Held That Age-Related Comments Made by Chief Blackwell During Smith's Pre-Disciplinary Hearing Were Not Direct Evidence of the City's Discriminatory Animus to Terminate Smith's Employment.

##### 1.  The District Court Incorrectly Stated the Elements of the Four-Factor Test to Determine Whether a Decisionmaker's Age-Biased Comments are Direct Evidence of Discriminatory Animus.

In *Cooley v. Carmike Cinemas, Inc.,* 25 F. 3d 1325 (6th Cir. 1994), this Court

held that in age discrimination cases, statements allegedly showing an employer's age

bias are to be evaluated by considering four factors: (1) whether the statements were

made by a decision-maker or by an agent within the scope of his employment; (2)

whether the statements were related to the decision-making process; (3) whether the

statements were more than merely vague, ambiguous or isolated remarks; and (4)

whether they were made proximate in time to the act of termination. *Peters v. Lincoln

Elec. Co.,* 285 F.3d 456, 477-78 (6th Cir. 2002) quoting *Cooley* at 1330.

> The Trial Court's Order lists these factors as follows:

> > In determining whether a statement is direct evidence of discrimination,
> > courts consider whether it was (1) made by a decisionmaker, (2) related
> > to the adverse employment decision at issue, (3) made proximate in time
> > to the adverse employment decision, and (4) more than a vague or
> > ambiguous remark. *Peters v. Lincoln Electric Co.,* 285 F. 3d 456, 477-78 (6th
> > Cir. 2002).

Opinion, Doc#70, PageID#2487.  By comparison, the court misstated the four-factor

test.  Specifically, the court omitted the language, "or by an agent within the scope of his

employment," from the first factor.  The court erroneously substituted the language

"adverse employment decision" for the correct statement, "related to the decision-

making process" for the second factor. The court substituted the language "proximate

in time to the adverse employment *decision*," instead of "proximate in time to the *act*" of

termination. The Court also altered the third factor of the test; instead of "more than

merely vague, ambiguous or isolated," the Court lists only "more than a vague of

ambiguous remark." The Trial Court's misstatements of law materially altered the facts

that it chose to rely upon to make its decision regarding whether Blackwell's statements should be analyzed as direct evidence.

Taken in the light most favorable to Smith, the evidence Smith introduced shows that Blackwell was a supervisor within the scope of his employment when he made his comments regarding "younger officers" in the context of reviewing Smith's performance and making the recommendation that Smith be terminated. Blackwell's statements were clearly made in the context of the decision-making process. Contrary to the court's finding, these statements were more than "merely observational." Doc#70, PageID#2487.

### 2. The Trial Court Failed to Address All Four Factors of the Test In Light of the Evidence Presented.

The Trial Court did not consider all of the established facts in Smith's favor in light of the correct four-factor test. The Court erred when it omitted relevant facts presented by Smith pertaining to those portions of the four-factor test. These same facts are relevant to address whether Blackwell's age-related comments made during Smith's pre-disciplinary hearing constituted direct evidence of discrimination. The Court engaged in improper weighing of the evidence, omission of other relevant facts presented by Smith from its analysis, and did not construe the evidence in a light most favorable to Smith.

The Court only considered whether Blackwell's statements were either "ambiguous" or "vague" without reference to the relevant evidence pertaining to any of the factors that the Court failed to consider. The Court incorrectly characterized

Blackwell's comments to age-related comments made by the employer in *Sanders v. Lincoln Cnty, Tenn.,* 231 F. Supp.3d 290, 295 (E.D. Tenn. 2017), concluding that "[merely] observing that Plaintiff was an 'older man' appears to be the quintessential ambiguous remark warned against by the Sixth Circuit, as it requires an inference as well as context to be construed as discriminatory." Opinion of the Trial Court, Doc#70, PageID#2487. However, Blackwell's comments regarding "younger officers" in the context of Smith's pre-disciplinary hearing cannot be characterized as "mere observation" during the course of Smith's employment—these comments were central to the decision-making process which led to the decision being made to terminate Smith. As such, Blackwell's statements should have been analyzed as direct evidence of discriminatory animus.

The "conduct of a non-decision-maker may be probative of whether an adverse action directed at a plaintiff occurred under circumstances supporting an inference of discrimination." *Rachells v. Cingular Wireless Emp. Servs.,* LLC, 732 F.3d 652, 665 (6th Cir. 2013). "Discriminatory statements made by individuals occupying managerial positions," moreover, "can be particularly probative of a discriminatory workplace culture." *Risch v. Royal Oak Police Dep't,* 581 F.3d 383, 393 (6th Cir. 2009). See *Liebau v. Dykema Gossett,* PLLC, 2024 WL 1739750, at *5 (C.A.6 (Mich.), 2024).

Blackwell's statement was discriminatory on its face, and such statements are to be considered "highly probative." Blackwell occupied a supervisory position and was present at Smith's disciplinary hearing. As such, these statements must be taken as direct

evidence of discriminatory animus towards Smith.

## II.   THE DISTRICT COURT ERRED WHEN IT FOUND THAT OFFICER REDMON WAS NOT SIMILARLY SITUATED TO OFFICER SMITH AND DID NOT ADDRESS SMITH'S EVIDENCE REGARDING PRETEXT.

The Trial Court applied the legal standard too narrowly in order to determine whether Smith was similarly situated to Redmon, who did not receive discipline and was therefore treated more favorably than Smith.  Moreover, the Trial Court failed to address relevant, probative evidence that the reasons the City gave for disciplining Smith were pre-textual.

Following Smith's termination, Smith filed a grievance and proceeded to arbitration.  The Arbitrator could find no grounds under which the City could have determined that Smith had violated any policy when he engaged in the pursuit of the driver on May 30, 2020.  As explained more fully below, a reasonable jury could have determined that Redmon was similarly situated and that he was treated more favorably than Smith.  Based on the Arbitrator's opinion, Smith has introduced evidence indicating that the reasons given for opening an investigation of his conduct and disciplining Smith had no basis in fact and were pretext for a discriminatory motive for the action that the City took.

### A.   Smith Established A Prima Facie Case of Age Discrimination by Demonstrating That Other Similarly Situated Police Officers Committed the Same or Similar Policy Violations and Were Not Disciplined.

Circumstantial evidence of discrimination is analyzed under a burden-shifting

framework. *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802-06, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973). To establish a prima facie case of age discrimination, a plaintiff must show that the plaintiff (1) was a member of a protected class (older than 40 years old); (2) suffered an adverse employment action; (3) was qualified for the position held; and (4) was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *Pelcha v. MW Bancorp, Inc.,* 988 F.3d 318, 326 (6th Cir. 2021). If a plaintiff successfully makes a prima facie claim of discrimination, the burden of production "shifts to the employer to identify a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 325. If the employer identifies a legitimate reason, the burden shifts back to the plaintiff to prove that the employer's reason is pretextual. *Id.*

The Trial Court erred when it construed the applicable Sixth Circuit standard too narrowly. The Trial Court concluded that Smith was not similarly situated to Greg Redmon ("Redmon"), another police officer who made several of the same mistakes that Smith made, during the same police call incident on May 30, 2020. Smith and Redmon were both police officers reporting to Blackwell, the police chief. When viewed in the light most favorable to Smith, a reasonable jury could find sufficient evidence that Smith was similarly situated to Redmon in all relevant aspects, and conclude that Redmon was treated more favorably because he was not disciplined. A reasonable jury might also conclude that this different treatment between the two officers may only be explained by the age bias of decision makers.

17

The Trial Court also erred in its analysis of whether Redmon was similarly situated to Smith.  However, the only evidence that the Trial Court considered in this regard was that (1) Smith had a history of written reprimands, employee improvement plans, policy violations, and a suspension, while Redmon did not (Doc No. 62 at PageID 1355); (2) Smith admitted Redmon did not make all the same policy violations as him on May 30, 2020, such as initially pursuing the vehicle, not activating a motor vehicle recorder, and speaking disrespectfully to a member of the public (Doc No. 64 at PageID 1415, 1418-20); and (3) Redmon had no involvement in the incident of May 31, 2020 (Doc No. 64 at PageID 1415).

Conversely, Smith introduced evidence showing that Redmon was similarly situated to Smith, in that he (1) arguably engaged in the same pursuit that the City claimed violated its policies; (2) Did not render any medical aid to the driver of the vehicle; and (3) failed to change his gloves while collecting evidence from the scene, thus potentially contaminating crime scene evidence. Doc#63, PageID#1391-92.  Here, the Trial Court improperly engaged in weighing the credibility of the evidence, as well as severity of Smith's alleged policy violations in comparison to those of Redmon.  The Trial Court also incorrectly stated that Redmon was not engaged in the pursuit, but "was somehow involved," on May 30, however, Smith introduced relevant evidence demonstrating that Redmon did engage in the pursuit along with Smith. Defendant's Motion, Attachment 19, Arbitration Transcript, Ex. B-1 Doc#57, PageID#704. Evidence actually showed that Redmon was engaged in the pursuit, because he arrived

at the scene with his "sirens on and lights flashing." *Id.*

This Court has cautioned against a too-narrow reading of the definition of "similarly situated" under *Mitchell v. Toledo Hosp.,* 964 F.2d 577(6th Cir. 1992). *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (1998). "A prima facie standard that requires the plaintiff to demonstrate that he or she was similarly situated in every aspect to an employee outside the protected class receiving more favorable treatment removes from the protective reach of the anti-discrimination laws employees occupying "unique" positions, save in those rare cases where the plaintiff produces direct evidence of discrimination." *Id.* at 353.

The Trial Court erred when it failed to address the relevancy of these factors to Smith's claim that the City treated Smith less favorably than Redmon when the City disciplined him in regards to the May 30 incident. The District Court failed to consider all of the evidence that Redmon had also engaged in the pursuit of the vehicle. Furthermore, Smith introduced the testimony of Captain Allen ("Allen"), who stated that based upon his investigation of the facts, he recommended that Redmon also receive discipline for his infractions during the May 30 traffic incident. Allen Dep., Doc#60, PageID#1308. Allen testified that he was told by Chief Blackwell that Redmon would not receive any discipline. *Id.* Thus, Redmon received more favorable treatment than Smith when the City made the decision to completely overlook Redmon's policy violations, which were many of the same type of policy violations committed by Smith. What is most striking is that Redmon did not receive *any*

disciplinary action, and, was later promoted.

The Trial Court erred when it required, as a matter of law, that Redmon had to have committed *all* the same infractions that Smith did in order to hold that Redmon was "similarly situated" to Smith. Doc#70, PageID#2490. Practically, the Trial Court's interpretation and application of the law would have required that Redmon literally stand in Smith's shoes on that particular day, and commit identical policy violations, in order to be deemed a comparator to Smith.   This Court has never endorsed such a narrow construction of the "similarly situated" analysis and has cautioned against it. *Ercegovich* at 353.

Smith presented sufficient evidence to demonstrate that Redmon was similarly situated to Smith, and that he was treated more favorably than Smith because Redmon received no disciplinary action for any of the same policy violations committed by Smith.  Therefore, the Trial Court's holding that Redmon was not similarly situated was in error.

> **B.    It Is Undisputed That Smith Was the Oldest Police Officer on the Force, and That Redmon is Substantially Younger Than Smith.**

The Trial Court held Smith did not satisfy his *prima facie* burden to show that "another employee of similar qualifications, who was not a member of the protected class, was treated more favorably."  Order of the Trial Court, Doc.#70, PageID#2489. Smith asserted that Redmon is not a member of the protected class under the ADEA, specifically that Redmon "was similarly situated, younger, and treated more favorably

than [him]." Doc.#67, PageID#2377. The City did not dispute the fact that Redmon is younger than Smith.

Without objection, Police Chief Michael Blackwell admitted that Smith is the "oldest police officer on the force." Doc.#62, PageID#1369. As an element of Smith's *prima facie* burden, the City presented no contrary argument or evidence on this point. It is also undisputed that Smith was the "most experienced" officer on the force, and also the "most trained," a fact repeated by Blackwell several times and in his affidavit. Blackwell Aff., Doc#57-1, PageID#363.

The burden placed upon **the movant** for summary judgment is to show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to preclude the granting of summary judgment, the non-moving party must show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989). *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 403 (C.A.6 (Ohio), 1992).

The non-moving party bears a burden once the movant has pointed to record evidence showing that there are no genuine issues of material fact: "*the adverse party's response,* by affidavits or as otherwise provided in this rule, *must set forth specific facts* showing there is a genuine issue for trial." (emphasis added). As the Supreme Court stated in *Celotex,* the non-moving party must "designate" such specific facts. *Id.,* 477 U.S. at 324,

106 S.Ct. at 2553. However, this burden "might not require the nonmoving party to 'designate' facts by citing specific page numbers," ... [but] "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989). "This burden to respond is really an opportunity to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden—for example, by remaining silent—its opportunity is waived and its case wagered." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 405 (C.A.6 (Ohio), 1992). See *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990).

The instant case is distinguished from *Guarino*. The plaintiff in that case, when faced with facts presented in the defendant's summary judgment motion, simply failed to respond at all. Here, the City did not brief any objections to Redmon being substantially younger than Smith. Conversely, the vast majority of this Court's cases applying *Guarino* in this regard involved cases where a movant presented contrary facts, and the non-movant simply failed to respond with evidence showing that the particular fact at issue was disputed. See fn. 5, *Guarino* at 404. Here, the City failed to voice any objection to the fact that Smith's comparators were substantially younger than he is. Smith has established that he is a member of the protected class, and that Redmon was a similarly situated, substantially younger officer who was treated more favorably than Smith.

C.    **The District Court Erred When It Failed to Analyze Whether Blackwell's Statements Were Probative as Circumstantial Evidence.**

The Trial Court failed to analyze Smith's assertion as to whether Blackwell's statement regarding "younger officers" serves as sufficient circumstantial evidence to satisfy the fourth prong of Smith's *prima facie* case.  Opinion, Doc#70, PageID#2491.  Instead, the court answers this question referencing only the discussion in the prior sections of the Opinion regarding Smith's proffer of direct evidence, stating, "However, for the reasons explained above, Blackwell's single observational statement does not reveal discriminatory animus sufficient to establish evidence of age discrimination.  See Supra Par III(A)(I)." *Id.*

In contrast, this Court has held that discriminatory remarks offered as direct evidence of age discrimination are also probative as circumstantial evidence. *Risch v. Royal Oak Police Dept.,* 581 F.3d 383, 393 (6th Cir.2009) ("We have held that discriminatory remarks, even by a non-decision-maker, can serve as probative evidence of pretext.").  *Hale v. ABF Freight System, Inc.*, 503 Fed.Appx. 323, 335 (C.A.6 (Tenn.), 2012). In order to be considered as circumstantial evidence, an inference must need to be made from Blackwell's statements to connect the expressed discriminatory animus to the adverse employment action. *Id.*  The Trial Court admitted that "Several inferences would have to be made to conclude that Blackwell's statement of observation ("younger officers [did not] make the mistakes that [Smith] made") reveals a discriminatory attitude…").  Opinion, Doc#70, PageID# 2488.  However, the Trial Court failed to

address whether such inferences, taken together with the record as a whole, would permit Blackwell's comments to be taken as circumstantial evidence of discrimination, or in support of pretext.

Here, a reasonable jury could make such inferences, to determine that Blackwell's statements made during Smith's pre-disciplinary conference directly to Smith could be viewed as circumstantial evidence of a discriminatory animus. Blackwell's statements demonstrate that the focus during Smith's pre-disciplinary conference was impermissibly centered on comparing his performance to "younger officers." Therefore, a reasonable jury could also determine that Smith's overall work performance was impermissibly gauged in relation to his age and in relation to the performance of younger officers, instead of in relation to the work activities themselves, to determine discriminatory animus. "Employers are to evaluate [older] employees ... on their merits and not their age." *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 422, 105 S.Ct. 2743, 2756, 86 L.Ed.2d 321 (1985).

Here, the Trial Court failed to analyze whether Blackwell's statements could be taken as circumstantial evidence of the City's true discriminatory animus towards Smith in the context in which the statements were given, and in a light most favorable to Smith. The Trial Court also engaged in weighing of this evidence, holding that Blackwell's statement amounted to nothing more than a "single observational statement" that is "insufficient" to establish evidence of age discrimination. Doc#70, Page ID#2488. In this regard, the Trial Court disregarded Smith's evidence and

engaged in improper weighing of the evidence.

   **D.    The District Court Erred When It Disregarded Smith's Evidence Which Demonstrated That Decision-Makers for the City Used the Term "Experience" as a Proxy for Age.**

   The Trial Court failed to address whether Blackwell's statements, in context, could be evidence that Blackwell used the term "experience" as a proxy for the term "age" in describing his reasons for recommending Smith be terminated. "An employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity, but must instead focus on those factors directly." *Hazen Paper Co. v. Biggins*, 113 S.Ct. 1701, 1706, 507 U.S. 604, 611 (1993).   Blackwell's statements showed discriminatory animus because a jury could find that these particular statements were not descriptive of Smith's "experience," but rather, Smith's age. A jury could find that Smith was not being evaluated based on his performance, but rather, in relation to the performance of "younger" officers, who had less experience.  Blackwell appeared to use the two terms interchangeably to avoid having a discussion about why he thought younger officers performed better.

   First, Blackwell testified that he "watch videos of younger Officer that didn't make the mistakes that Jeff [Smith] made." Doc#62, PageID#1358; Doc#67, PageID2359. Blackwell later testified that he thought this statement to be true at the time he made it. *Id.*  Then, Blackwell explained that he had referenced "younger officers" during Smith's pre-disciplinary hearing *because* he believed that a "lesser experienced" officer would have done his job better than Smith: "Yeah. I believe a lesser experienced officer would have

done better. *Id.* These statements, taken together in the context of Smith's pre-disciplinary hearing, during which his fate would be decided by decisionmakers who were squarely influenced by Blackwell's opinion, show evidence of discriminatory age bias.

### E.    The District Court Disregarded Smith's Evidence That the City's Claim Smith Violated the Pursuit Policy Had No Basis in Fact, and Was Pretextual.

Smith introduced sufficient evidence for reasonable jury to conclude that the City's reason for launching an investigation into Smith's conduct had no basis in fact. Under *McDonnell Douglas* and its progeny, once the plaintiff succeeds in making out a prima facie case of age discrimination, the defendant must "articulate some legitimate, nondiscriminatory reason" for the termination. *Id.* at 802, 93 S.Ct. 1817. "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury,* 344 F.3d 603, 615 (6th Cir.2003). *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (C.A.6 (Ohio), 2012) A plaintiff may show pretext by demonstrating that the employer's proffered reason for termination "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hale v. ABF Freight System, Inc.*, 503 Fed.Appx. 323, 334 (C.A.6 (Tenn.), 2012). Smith presented evidence relevant to all three methods of showing pretext.

In support of his argument that the City's proffered reason for terminating Smith was pretext, Smith introduced the full Opinion and Award of Arbitrator Michael Paolucci (the "Arbitrator"). Plaintiff's Ex. 1, Doc#67-1, PageID#2387-2447. Smith

pointed out that the arbitrator found that the City's allegation that Smith initiated an illegal pursuit, were simply not plausible. Doc#67-1, PageID#2439. The Arbitrator found the testimony of Blackwell was inconsistent, not credible and could not be relied upon as to that issue. *Id.*

In *Hamilton v. General Electric Co.*, 556 F.3d 428 (6th Cir.2009), the employee alleged that his employer waited for a "legal, legitimate reason to fortuitously materialize," and then used that reason to cover up its true motivation for firing him. *Id.* at 436. The court concluded that the employee had raised a question of fact sufficient to defeat a motion for summary judgment because he "contested the facts underlying his termination" rather than simply denying the employer's stated reasons for his dismissal. *Id.* at 438. This Court held that the Trial Court improperly ignored the plaintiff's evidence in this regard, finding that the plaintiff did not "merely offer her own opposing opinion of her qualifications, but challenged the factual basis of the accusations."

Similarly, in *Blizzard v. Marion Technical College,* 698 F.3d 275, 285–86 (C.A.6 (Ohio), 2012), this Court ruled that the Trial Court should have "give[n] credence to the 'evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Id.* at 437 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). This Court held that the district court erred when it failed to consider evidence contesting the facts behind the employer's stated reasons for the termination. *Blizzard* at 285–86.

During the arbitration, Blackwell testified that the City had no policy which

would have prevented officer Smith from initiated a pursuit of the suspect on that day.

Defendant's Motion, Attachment 19, Arbitration Transcript, Ex. B-1 Doc#57,

PageID#703.    In arriving at his conclusion that the City's termination of Smith, and

the arguments presented in support thereof, were "without merit", the Arbitrator relied

specifically upon the conflicted testimony of Chief Michael Blackwell in regards to

whether Smith violated any of the City's policies:

> In reaching a conclusion as to whether the Policy was violated, a review
> of the Chief's testimony on this point is instructive.  Under cross-
> examination, the Chief conceded that the Policy does not prohibit an
> Officer from pursuing a vehicle that has engaged in a misdemeanor, or a
> traffic violation.  As noted the Grievant was faced with at least a traffic
> violation, and perhaps a criminal trespass.  The weakness of the City's
> case in attempting to prove that the Grievant should not have initiated
> the pursuit was proven by the Chief's cross-examination where he tried
> to avoid the logical conclusion that the Grievant was actually correct.  At
> first the Chief claimed that there was not enough evidence to conclude
> that the Grand Am was trespassing.  When faced with the record of
> what occurred, and based on testimony of Allen, he finally conceded that
> the Grievant' s report involved a potential violation of R.C. 4511.201.
> What follows is that the Grievant was not in violation of the Policy since
> he viewed the reckless operation of a motor vehicle on private property,
> and began following the driver.

Response in Opposition, DocID#67-1, PageID#2380; *Id.* at PageID#2439.  This

evidence should have been considered by the Trial Court for the purpose of establishing

pretext.  However, the Trial Court did not address this evidence at all.  The Trial Court

erred when it failed to address this highly probative evidence of pretext, because Smith

contested the facts underlying his termination via the grievance and arbitration process

and did not merely offer his own personal opinion that the underlying reasons for his

termination were invalid.  For these reasons, the Trial Court's exclusion of all discussion of the Arbitrator's Opinion and Award was error.

## III.  THE TRIAL COURT ERRED WHEN IT DID NOT ADDRESS ALL OF THE EVIDENCE PRESENTED REGARDING THE CITY'S RETALIATORY ACTIONS.

The Trial Court failed to address all of the probative evidence introduced by Smith to demonstrate that the City retaliated against him.  The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination. 29 U.S.C. § 623(d). Similarly, Ohio law provides that it is unlawful for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice." Ohio Rev. Code Ann. § 4112.02(I).

To establish a prima facie case of retaliation under either federal or Ohio law, a plaintiff must show that "(1) she engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action." *Greer–Burger v. Temesi*, 116 Ohio St.3d 324, 879 N.E.2d 174, 180 (2007) (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990)); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir.2008).  *Blizzard v. Marion Technical College*, 698 F.3d 275, 288 (C.A.6 (Ohio), 2012).

Smith's arguments that the City retaliated against Smith consisted of several

actions that the City took immediately, following Smith's reinstatement with backpay. Smith presented additional evidence while only one of those actions involved the fact that Smith was unreasonably delayed by the City in returning to work. However, Smith introduced additional evidence of retaliation in addition to the facts and circumstances surrounding Smith's fitness-for-duty examination. The Trial Court failed to address any of this additional evidence and focused only on the mere fact that the City had required a fitness-for-duty examination.

The standard to determine whether an employer's actions may be viewed as retaliatory is an objective one. This Court has cited, with approval, the approach given by the Eleventh Circuit regarding whether an employer's actions, taken together within a short period of time, are evidence of retaliation insofar as they might dissuade an employee from pursuing a charge of discrimination. "A 'reasonable employee' is far less likely to be deterred by these kinds of actions when spread out over several years rather than condensed in the days or months following the protected activity." *Lahar v. Oakland Cnty.,* 304 Fed.Appx. 354, 359 (C.A.6 (Mich.), 2008), citing *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1455-56 (C.A.11 (Fla.),1998) (concluding that numerous small actions, all occurring within a two-month period, constituted materially adverse action).

Allegations that a referral for examination may be retaliatory supports a prima facie case for retaliation. *Broach v. City of Cincinnati,* 2013 WL 3712338, at *8 (S.D. Ohio, 2013). See Also *Hodges v. City of Milford,* 2013 WL 210278 (S.D. Ohio, Jan. 18, 2013).

Under pretense of needing Smith to undergo a psychological examination, the City objectively delayed reinstating Smith after an arbitrator ordered that Smith be reinstated to his position on June 8, 2021.

Defendant refused to bring Plaintiff back to work after the arbitration awarded reinstatement and instead ordered Smith to undergo a psychological examination, which was not scheduled to occur until July 16, 2021, more than a month after the arbitrator ordered the City to reinstate Smith. Smith Dep., Doc#64, PageID#1435. Smith attended the examination with Dr. Quarry on July 16, 2021. *Id.* Dr. Quarry indicated to Smith that he would clear Smith for duty within the following seven (7) days. *Id.* However, the City still did not act on Dr. Quarry's opinion that Smith could return to work.

Instead, the City took further retaliatory action by questioning Dr. Quarry's opinion and asking Dr. Quarry, for the first time, to review the videotape from Smith's May 30, 2020 incident "to support their belief that I'm unfit, delaying my return." *Id.* On August 3, 2021, Dr. Quarry confirmed that the videos he reviewed only supported his belief that Smith could be returned to work. *Id.* On August 11, Dr. Quarry contacted Smith at home to confirm that Smith had actually been returned to work. Smith was not yet returned to work. *Id.* Dr. Quarry responded to Smith that he, Dr. Quarry had returned Smith to work, twice. *Id.* That same day, the City contacted Smith and scheduled him to return to work on August 16, 2023. *Id.*

The Trial Court erred when it failed to address Smith's evidence showing that the

reason given by the City as to why it required Smith to undergo a psychological examination in order to return to work after the arbitrator's order reinstated Smith lacked credibility. The City's initial justification for not immediately returning Smith to duty and instead, sending him for psychological testing, was because Smith had mentioned during his interview in June of 2020 regarding the incidents that took place on May 30, 2020 and May 31, 2021, that Smith had been "stressed" during the incidents. Alternatively, the City argued that it ordered the examination due to the fact that Smith had been on administrative leave from June of 2020 to the time he returned to work in August of 2021, and that he had performed no police work during that time "whatsoever." Defendant's Motion, Page ID# 348.

The City's reason in this regard may be seen as pretextual, precisely because the City relied on a statement Smith made over a year prior to his reinstatement, and, the fact that the City ordered Smith to undergo a psychological examination, but did not also order a physical examination at the same time. Blackwell Dep., Doc#62, PageID#1364; Applegate Dep., Doc#61, PageID#1339. Furthermore, Smith's Collective Bargaining Agreement clearly states that the City must have had "reasonable cause to believe an employee is mentally or physically unable to perform required duties" in order to require an examination. Smith Dep., Ex. 10 Previous CBA, Doc#64-19; 64-20 Current CBA; Smith Dep. Doc#64, PageID#1423. Taken in the light most favorable to Smith, it is difficult to imagine that the City would have had actual, "reasonable cause" to infer that Smith was presently mentally unable to perform his

required duties from a passing statement made two years prior, and especially since Smith had participated in a lengthy arbitration process since then.

In addition to the facts and circumstances surrounding Smith's fitness-for-duty examination, however, Smith also provided extensive evidence that the City retaliated against Smith by issuing him frequent disciplinary action once he had returned to work. In fact, once he won his arbitration and was finally reinstated, the City issued additional disciplinary action to Smith, the frequency and severity of which far exceeded the frequency and severity of the disciplinary action that he had received during all of his years prior as a police officer with the City.

When the City finally returned Smith to work on August 16, 2021, several of the other Officers approached Smith and warned him that the City would be "watching him" and intended to micro-manage *Id.* at PageID#1428. Shortly thereafter, the City began to issue disciplinary action to Smith more frequently than it had in the past. On September 4, 2021, Smith was given an Employee Performance Improvement Plan ("EPIP") in regards to an alleged schedule change issue. Ex. 12, Doc#64-21. Smith presented documentation that was never notified of the change, and Smith gave rebuttal to the disciplinary action, noting that he had received several schedule changes that had been made on September 1, 2021 for work dates on September 3, September 8, and September 9, but that the record demonstrated he did not receive any schedule change notification for September 4, the date the City alleged that he was late for work. *Id.*

On or about October 20, 2021, Smith received a Letter of Reprimand. *Id.* at

PageID#2143. The FOP filed a grievance and on December 7, 2021, the letter of reprimand was removed and the grievance was sustained on Smith's behalf. Smith received additional "EPIP's" on November 28, 2022, March 27, 2023, and July 4, 2023. Id., Doc#64-24; 64-25; 64-26.

In contrast to the frequency of disciplinary action that Smith began to receive after his reinstatement and after he had filed a charge of age discrimination against the City, during the entire five-year period leading up to his termination in 2020, Smith had a total of seven (7) instances of disciplinary conduct from the City. Most recently, Smith had received only one (1) instance of disciplinary action during the entire year in 2019. Id. Smith's most recent suspension had occurred in December of 2014. Id. This contrasts sharply with the number of disciplinary actions that Smith received upon his return to work.

On or about May 16, 2022, Smith filed a second charge of discrimination and retaliation with the Ohio Civil Rights Commission and the EEOC, alleging retaliation, disciplinary action, harassment and failure to promote by the City in retaliation for Smith filing and pursuing an age discrimination charge. Id., at PageID#1952-1954. Smith asserted that since his employment was reinstated, he had been subject to various discriminatory acts that he believed were based on his age and in retaliation for pursuing his prior age discrimination charges. Id. at PageID#1958-59. Contrary to the City's statements that Smith "dismissed" this charge, Smith availed himself of the available procedures and requested that the EEOC issue a Notice of Right to Sue in lieu of a full

investigation. *Id.* at PageID#1955. The EEOC issued a Notice of Right to Sue in October 2021 on Smith's second charge of discrimination and retaliation. *Id.* at PageID#1964.

As summarized above, Smith presented relevant, probative evidence that the City engaged in impermissible retaliation towards Smith for pursuing his age discrimination charge after he was reinstated. The City attempted to obstruct the City's own independent medical examiner from returning Smith to work. Furthermore, the City's obstruction coincided with the City's award of several promotions during this time, when it proceeded to promote younger officers before the City allowed Smith to return to work. Smith had more seniority than any other officer, and would have been in line for these promotions had he been promptly reinstated per the Arbitrator's order. Once Smith returned to work, the City began to further retaliate against him by the City's negotiation of pay raises for every officer on the force except Smith, who specifically excluded from any pay increase upon his return. Further, the City began issuing him disciplinary action more frequently and for minor issues. Because Smith has introduced sufficient evidence of retaliation to survive summary judgment, the Trial Court's decision should be reversed.

## CONCLUSION

For all of the foregoing reasons, the District Court erred in granting the City of Union's

Motion for Summary Judgment, and its judgment should be reversed.

Respectfully submitted,

Dated: October 16, 2024

*/s/ Matthew D. Stokely*
Matthew D. Stokely (OH 0062971)
PICKREL, SCHAEFFER & EBELING CO., LPA
2700 Stratacache Tower
Dayton, Ohio 45423
T: (937)223-1130/ F: (937) 223-0339
E: mstokely@pselaw.com
Attorney for Plaintiff-Appellant
Jeff Smith

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 6 Cir. R. 32(b) because it contains 10,460 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(i).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

Dated: October 16, 2024                    */s/Matthew D. Stokely*
                                           Matthew D. Stokely


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Opening Brief of Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: October 16, 2024                    */s/Matthew D. Stokely*
                                           Matthew D. Stokely

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| DOC# | Description | PageID |
|------|-------------|--------|
| 57 | Defendant City of Union Motion for Summary Judgment | 318 |
| 57-1 | Blackwell Affidavit | 362 |
| 57-19 | Arbitration Transcript, B-1 | 541 |
| 60 | Deposition of Chris Allen | 1295 |
| 61 | Deposition of City Manager John Applegate | 1333 |
| 62 | Deposition of Police Chief Michael Blackwell | 1350 |
| 63 | Deposition of Greg Redmon | 1388 |
| 64 | Deposition of Jeff Smith | 1403 |
| 64-15 | Exhibit A-10 to Deposition of Jeff Smith | 1966 |
| 64-16 | Exhibit A-11 to Deposition of Jeff Smith | 532 |
| 64-17 | Exhibit A-12 to Deposition of Jeff Smith | 533 |
| 64-19 | Exhibit 10 to Deposition of Jeff Smith (CBA) | 2082 |
| 64-20 | Exhibit 11 to Deposition of Jeff Smith | 2103 |
| 64-21 | Exhibit 12 to Deposition of Jeff Smith | 2123 |
| 64-22 | Exhibit 13 to Deposition of Jeff Smith | 2143 |
| 64-25 | Exhibit 16 to Deposition of Jeff Smith | 2163 |
| 64-26 | Exhibit 17 to Deposition of Jeff Smith | 2167 |
| 67 | Response in Opposition to Motion for Summary Judgment | 2356 |
| 67-1 | Arbitrator's Opinion and Award | 2388 |
| 70 | Order Granting Defendant's Motion for Summary Judgment | 2479 |